IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **KEVIN W. WILSON, JR.** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-567-JJF |
| | ) | |
| **PERRY PHELPS,** Warden | ) | |
| and **JOSEPH R. BIDEN, III**, Attorney | ) | |
| General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

### ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In July 2001, the petitioner, Kevin W. Wilson, Jr., was convicted in a Delaware Superior Court jury trial of two counts of first degree rape, one count of second degree rape, one count of second degree assault, and four counts of possession of a deadly weapon during the commission of a felony. (Superior Court Criminal Docket #0012014953, D.I. 26). The Delaware Supreme Court, in *Wilson v. State*, 2002 WL 1159714 (Del. 2002) (*Wilson I*) summarized the circumstances of Wilson's crimes:

> On the evening of Friday, December 21, 2000, Wilson met Jorge Sierra and Naydean Cornish at a tavern in Greenwood, Delaware. Neither Sierra nor Cornish had met Wilson before that night. At the tavern, Wilson, Sierra, and Cornish drank alcohol and played pool until the tavern closed. They then moved to Wilson's nearby apartment and continued drinking. The State argued at trial that, at some point that evening, a visibly intoxicated Sierra went into Wilson's bathroom where Wilson attacked him with a pool stick, leaving Sierra unconscious. Wilson then threatened and repeatedly raped Cornish. Cornish managed to free herself

1

from Wilson and ran outside to Wilson's neighbor's house and called the police. Cornish then went to the hospital where she was examined. As part of the examination, the nurse conducted tests for inclusion in a rape kit.

Wilson was sentenced to a term of seventy-eight years imprisonment, suspended after forty-eight years for a term of probation to follow. *State v. Wilson*, 2006 WL 1064179 at *1 (Del. Super. 2006) (*Wilson II*). On appeal, the Delaware Supreme Court affirmed Wilson's convictions and sentence. *See Wilson I*, 2002 WL 1159714. Wilson filed a motion for postconviction relief in November 2005, which was denied by the Delaware Superior Court. *See Wilson II*, 2006 WL 1064179. Superior Court ruled that all of Wilson's ineffective assistance of counsel claims were meritless. *Id*. Superior Court's decision in *Wilson II* was affirmed by the Delaware Supreme Court in September 2006. *Wilson v. State*, 2006 WL 2632565 (Del. 2006) (*Wilson III*).

## Discussion

Petitioner claims, as his sole ground for relief, that his attorney provided constitutionally deficient representation in a variety of ways. Wilson, however, is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. §2244(d). Wilson, additionally, has not established that the state court's resolution of his ineffectiveness claims were "contrary to, or involved an unreasonable application of" United States Supreme Court precedent. Accordingly, Wilson is not entitled to relief.

Because Wilson's petition was dated September 2007, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F.

2

Supp. 783, 802-03 (D. Del. 1997). Under 28 U.S.C. §2244(d)(1)(A), therefore, Wilson's federal habeas petition must have been filed within one year of the date that Wilson's convictions became final.[1] Wilson's convictions became final, for purposes of habeas relief, on August 29, 2002, ninety days after the Delaware Supreme Court affirmed his convictions in *Wilson I*. Thus, Wilson's petition must have been filed on or before August 29, 2003 to be timely. Wilson's petition, dated September 7, 2007, was obviously filed past the August 2003 deadline. The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In turn, the tolling mechanism of §2244(d)(2) does not save Wilson's petition from the running of the limitations period. When applicable, §2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Wilson filed a motion for postconviction relief in November 2005. (Superior Court Criminal Docket #0012014953, D.I. 50). While Wilson's postconviction motion was timely under state law, it did not act to toll the limitations period because the limitations period had already run. Because Wilson has filed this federal habeas action more than four years beyond the §2244 bar, it is untimely.

Of course, as the Court has repeatedly noted, the limitations period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Wilson has

---

[1] Wilson does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable.

3

failed to demonstrate or even allege any extraordinary circumstances that prevented him from filing his petition with the Court in a timely manner. Wilson has, in fact, never been diligent in asserting his rights –he waited almost three and a half years after his conviction was affirmed by the Delaware Supreme Court to file his motion for postconviction relief, and waited almost an additional year to file the present action after the state supreme court affirmed the trial court's denial of his motion for postconviction relief. *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *LaCava v. Kyler*, 398 F.3d 271, 276-77 (3d Cir. 2005). Wilson cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Wilson's claims are untimely under § 2244(d), and there is no basis upon which any relevant time may be tolled.

*Claim One: Ineffective Assistance of Counsel*

Wilson claims that his attorney was ineffective in a variety of ways.[2] Specifically, Wilson claims that his attorney, Karl Haller, Esq., was ineffective when he: a) failed to request that the jury be given a self-defense instruction; b) failed to object to the testimony of Nurse Julie Gerhardt; c) failed to object when Cornish and Sierra were referred to as victims; d) failed to challenge the seating of a correctional officer on the jury; e) failed to object to the testimony of Detective Moriarty; f) failed to secure an expert witness to testify why Wilson would have falsely confessed to his crimes; g) failed to impeach Sierra with medical records that showed that Sierra was intoxicated at the time of the attack; h) set up a meeting between himself, Wilson, and the prosecutor to

---

[2] Because Wilson has neglected to file a memorandum in support of his federal habeas petition, Respondents will address his claims as they were raised in his state court pleadings. *See generally DeShields v. Snyder*, 829 F.Supp. 676, 678 n. 1 (D.De;. 1993).

4

discuss a plea; i) failed to object to statements, attributed to Wilson, that he was attracted to black women and had not had sex for a year; and j) failed to object when Officer Kirby read from his notes while testifying. Finally, Wilson claims that the cumulative errors of counsel deprived him of his right to a fair trial. To the extent Wilson raises claims not specifically addressed here, they are without merit. Because Wilson presented these claims to the Delaware Supreme Court in *Wilson III*, they have been properly exhausted. Wilson, however, is not entitled to federal habeas relief because he has not demonstrated that the Delaware courts' resolution of his particular claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir.), *cert. denied*, 537 U.S. 1049 (2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct

absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

To prevail on a claim of ineffective assistance of counsel, Wilson must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* standard is "clearly established" for purposes of §2254(d). *Williams v. Taylor*, 529 U.S. 362, 391 (2000). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996).

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Strickland,* 466 U.S. at 693, 696; *Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Because Wilson is unable to establish that the state courts'

6

decisions were "contrary to" existing Supreme Court precedent, he is not entitled to relief.

*a. Failure to Request a Self-Defense Instruction*

Wilson has failed to demonstrate that counsel was ineffective by not requesting an instruction on self-defense. In denying this claim, the Superior Court ruled that, looking at the evidence in the light most favorable to the accused, no reasonable jury could have found the facts Wilson suggested at trial:

> Wilson's version of the events is that he had consensual sex with Cornish, a woman that he had known for only several hours, and that it was Sierra who hit him. Wilson's version is simply not credible. If the sex between Wilson and Cornish had been consensual, then there would have been no reason for Cornish to have run out of Wilson's apartment at 4:00 a.m., covered in vomit and naked from the waist down, screaming for help. If the sex had been consensual, then there would have been no reason for Wilson to have told the police that he "raped that woman" and to have apologized to Cornish for pushing himself on her against her will. There is no credible evidence that this was anything but a rape. The rape and the assault were connected in this case. If the part about the rape is not credible, then the part about the assault is not credible either. Moreover, if Sierra was the aggressor, then there was no reason for Wilson to have apologized to Sierra for hitting him. No reasonable jury could have found the facts as Wilson suggests them. Therefore, Wilson was not entitled to a jury instruction on self-defense and Haller was not deficient for not requesting such an instruction.

*Wilson II*, 2006 WL 1064179 at \*2. While the isolated scenario presented by Wilson – Sierra striking him in the back with a pool cue while he was in the bathroom – if taken as true would support a self-defense claim, this was not an isolated incident, nor was it a close case. Wilson was charged with assaulting Sierra and raping Cornish several times, and confessed to attacking Sierra and raping Cornish. Thus, even viewing Wilson's affirmative defense testimony in a light most favorable to the defendant, Wilson's trial testimony was completely implausible, and no reasonable jury would have believed he

7

was acting in self-defense in attacking Sierra. Therefore, in light of the evidence against Wilson, Haller was not ineffective for failing to request a self-defense instruction. *See generally Lewis v. Mazurkiewicz*, 915 F.2d 106, 112-13 (3d Cir. 1990) (counsel was not ineffective where "trial counsel had ample grounds to conclude that a self-defense claim was unlikely to prevail"). Accordingly, Wilson is not entitled to relief.

*b. Testimony of Julie Gerhardt*

Wilson has, similarly, failed to demonstrate that Haller was ineffective for not objecting to the certified sexual assault nurse examiner's opinion that it was not abnormal for there to be no injury to Cornish's vagina after a forcible rape with a pool cue. Trial counsel had been provided with a copy of Julie Gerhardt's report in which she had written down Cornish's statement describing the assault as follows: "He then took a pool stick and put it in my vagina. He looked like he was going to jam it really hard. I grabbed the stick and then was able to get up." (B-32-37).[3] When the prosecutor asked Gerhardt: "[W]ith a round smooth object such as this [State's Ex. No. 1], do you also have to have physical injury...?", she responded:

> No, you do not. With slight penetration of the pool stick into the vagina, I would not expect to find major tearing, large bruising, swelling. She did complain of pain during the assault, immediately after the assault, but I did not notice any during my examination. But no, it's not abnormal not to find that.

(A-43-44). Rather than object to the qualifications of the nurse to render such an opinion, trial counsel extensively cross-examined the nurse, repeatedly eliciting her testimony that Cornish had no visible bruises, injuries or abnormalities indicative of forcible sexual

---

[3] All references to "B-" refer to the Appendix to the State's Answering Brief filed in *Wilson v. State*, 2006 WL 2632565 (Del. 2006). Similarly, references to "A-" refer to the Appendix to Appellant's Opening Brief.

8

intercourse (oral, anal, or vaginal). (B-39-49). This strategy was within the range of reasonable competent representation.

*c. Complaining Witnesses Referred to as Victims*

Wilson has failed to demonstrate that he suffered any prejudice from trial counsel's failure to object when four witnesses referred to Sierra and Cornish as victims instead of complaining witnesses. The record shows that Trooper James Hatfield of the Delaware State Police and Officer Michael Kirby of the Greenwood Police responded to the 911 call and arrived at the defendant's apartment complex around 4:30AM. (B-15-17, 24). Hatfield described first discovering Wilson ("a white male who was unconscious and had a head injury") on the sidewalk in front of 1006 Courts of Greenwood, then locating Sierra ("another injured subject") in an upstairs apartment, and finally meeting Cornish ("one of the other victims"), who had an injury to her face. (B-20; A-28). Kirby testified in a similar fashion, but used the term "victim" when describing Sierra ("a possible victim in the bathtub"), and Cornish (Kirby "was advised there was a victim in the back seat" of his patrol car). (B-24-26; A-29-30). There is no possibility that the outcome of the trial would have been different if trial counsel had objected to these remarks. Both officers were responding to a scene where it was unclear who was a victim and who was a suspect. After police gave emergency aid to Wilson, Kirby, and Hatfield entered Wilson's apartment, uncertain at that time whether a suspect was still inside. (B-25-26). Police found the bathroom door locked, kicked it open, and located Sierra inside the bathroom. (B-26-27). Kirby remained with Sierra while Hatfield left to "figure out exactly what is going on." (B-27). Under these circumstances, the officers' use of the word "victim" was simply a term of art synonymous with the term

9

"complaining witness," and the jury would not have drawn any inferences incompatible with the defendant's presumption of innocence.

The sexual assault nurse examiner also used the word "victim" when referring to a medical form she had used during her examination of Cornish. (B-37-38). The box she had checked off as "yes" apparently was entitled "Oral copulation of genitals of an assailant by victim." (A-43). The record shows that in questioning the nurse about this form, the prosecutor stated, "Ms. Gerhardt, is there also a section of that medical record where you actually, or a staff person, checks off what type of sexual acts are alleged by the patient?" (B-37). This question made it clear to the jury that the State was not endorsing the term "victim" used on the medical form. Thus, Wilson cannot show any prejudice here.

Finally, the record shows that the Delaware State Police evidence technician (Steve Mitchell) used the word "victim's" when describing Cornish's tennis shoes and clothes he had photographed in the defendant's bedroom. (A-62). The prosecutor immediately corrected Mitchell, stating, "The complaining party, Miss Cornish, I would ask you to refer to her as Miss Cornish." (A-62). Thus, to the extent that referring to Cornish as "victim" was error, it was cured in that instance. In light of the record, Wilson simply cannot show that he suffered any prejudice from his counsel's failure to object to these rare, isolated references to Cornish as "victim."

d. *Failure to Dismiss Four Jurors*

Wilson has failed to substantiate his conclusory claims of prejudice regarding four jurors on his jury panel. The record shows that during the trial, one juror informed the trial judge that she thought Detective Moriarity looked familiar and that she may have

10

seen him during school field trips, but she denied knowing him on any personal level. (A-24-27). Haller did not object because he did not think any encounter during a school field trip was relevant. (A-27). During the trial, a second juror informed the trial court that she had gone to secondary school with Officer Kirby, but had not seen or spoken with him in the ten years since she had graduated from high school, and was not even aware that he was a police officer. (A-39-41). She told the trial judge that she would not be inclined to give his testimony more or less credence because of the fact that had gone to school together. (A-41). The trial judge was apparently satisfied by her answers, and neither party objected to this juror remaining on the panel. (A-42).

The third juror Wilson objects to here was a hearing officer with the Department of Correction whom Haller chose not to challenge during jury selection after consulting with Wilson, who said he was satisfied with the officer. (A-72). Wilson cannot now claim that his attorney was ineffective when he consented to the seating of this juror. Accordingly, Wilson is not entitled to relief on this claim.

Wilson also claims that Haller was ineffective for not striking the last remaining African-American member of his venire. Wilson had already struck one African-American juror before Haller attempted to strike a second potential juror. Wilson directed Haller to strike the last African-American veniremen because she looked at him in a funny manner. (A-7-8). The prosecution raised an objection to Wilson's strike under *Batson v. Kentucky*, 476 U.S. 79, 106 (1986). The trial court found that Haller had a rational reason for striking the other African-American juror that was wholly unrelated to race, but reseated the juror who had stared at Wilson in a manner he did not like. (A-9-13). On direct appeal, the Delaware Supreme Court upheld the trial court's decision to

11

reseat the juror. *See Wilson I*, 2002 WL 1159714. Wilson, therefore, cannot establish that Haller was ineffective for failing to challenge the seating of any juror. Accordingly, he is not entitled to relief.

*e. Moriarity's Testimony*

During the incident, Cornish testified that she struck Wilson twice with the pool cue. (A-21). Wilson sustained an injury between his shoulder blades on the top portion of his back. (B-74-75). The mark visible on his back was long, thin, and rectangular, consistent with a blow from a pool cue. (B-76-77). During cross-examination, Haller asked Detective Moriarity, the chief investigating officer, whether the mark was consistent with Wilson's initial statement as to what happened, and Moriarity replied it was not. (A-64). Moriarity explained further:

> Again, just the location of the injury. As I demonstrated with Mr. Adkins, I do believe it was caused by a pool stick, but as to how that is going to occur, I disagree with his contention of how that happened. Unless this person was standing above and he reached over, whether he was standing or leaning over forward, that is the only way I can see he could be struck to cause that injury on his back, the way I saw it.

(A-64). When Wilson later took the stand, he testified that after urinating he was bending over to zip up his pants when Sierra struck him from behind with a pool stick. (B-85-86, 100).

In his postconviction motion, Wilson claimed Haller should have objected to this testimony as "junk expert testimony," and as creating a reverse vouching scenario. (A-69). Superior Court ruled that Moriarity's testimony was admissible as a lay opinion, and the testimony was not an attack on Wilson's credibility. *See* D.R.E. 701. Wilson declined to appeal his claim that the testimony was "junk expert testimony" to the

Delaware Supreme Court. As such, to the extent Wilson attempts to raise that claim here, the claim is unexhausted and procedurally defaulted.

Wilson is not entitled to relief on this claim. According to the Third Circuit:

> On habeas review, however, prosecutorial misconduct such as vouching [or, presumably, "reverse vouching"] does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial. Thus, habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned. The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'

*Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002) (citations omitted). Wilson simply cannot show that the testimony of Moriarity, which he was later able to rebut, was so harmful that it "made the resulting conviction a denial of due process." In the first instance, the record shows that no improper vouching for the credibility (or lack of credibility) of a witness occurred. The prosecutor was referring to Wilson's initial statement to police, not his trial testimony. Wilson later took the stand, testified in a manner consistent with Moriarity's description of how the injury could have occurred, and explained that he was intoxicated and not in his right mind during the interview with Moriarity. (B-93-94, 97). Wilson has failed to demonstrate that Haller was ineffective in eliciting Moriarity's testimony on this matter.

*f. An Expert on False Confessions*

The state courts correctly rejected Wilson's claim that Haller was ineffective for failing to procure an expert to explain why Wilson wrote an apology and confession to a crime he did not commit. Wilson has never, here or in any prior filing, presented anything other than his own conclusory allegations and irrelevant statistics to support his claim. The record shows that a pre-trial motion to suppress Wilson's statement was

13

denied. (A-73), and counsel unsuccessfully renewed his objection before Wilson's taped statement was introduced at trial. (B-70). Wilson maintains that Haller was ineffective in not retaining an expert to explain to the jury the concept of false confessions. Wilson, however, has never proffered any such expert or expert testimony in support of this or any other filing, nor did he establish that such expert testimony was scientifically reliable. *See New Jersey v. Free*, 798 A.2d 83 (N.J. Super. Ct. App. Div. 2002) (reversing lower court decision admitting expert evidence on false confessions where social psychologist's testimony did not satisfy the *Frye* test for determining the scientific reliability of expert testimony). Nor has Wilson demonstrated the relevance of any expert testimony to his case. In this case, Wilson wrote his letter of apology to Sierra and Cornish during a taped interview with police that lasted about one and a half hours. (B-66-78, 70-73). On the stand, he claimed after the tape recorder was turned off, Moriarity told him that the police had DNA evidence, and instructed him to admit to the rape. (B-96-97). Nevertheless, Wilson testified that the police did not tell him what to write, and that he wrote the letter during a period of silence actually heard on the tape. (B-98-99). *Compare Boyer v. Florida*, 825 So.2d 418 (Fla. Dist. Ct. App. 2002) (expert testimony that false confessions were obtained when certain tactics or techniques of interrogation were present should not have been excluded where defendant signed a written confession prepared by investigators for his signature). Haller was not ineffective for failure to secure an unnamed expert of dubious reliability to testify about Wilson's confession and, accordingly, Wilson is not entitled to relief on this claim.

g. *Impeachment of Jorge Sierra*

Wilson claimed, in a completely conclusory fashion, in his motion for postconviction relief that if the jury had known that Jorge Sierra had cocaine in his system and a .351 BAC, this evidence would have explained his behavior in attacking Wilson after he had consensual sex with Cornish. The jury was aware, however, that Sierra had been drinking heavily and smoking marijuana that night, (B-52-53, 55-56; A-58), and during Sierra's cross-examination the jury learned that he had three felony convictions, and had recently been in Family Court on charges of menacing, terroristic threatening, third degree assault, and criminal mischief. (B-57-62). The jury nonetheless found Sierra's testimony to be more credible than Wilson's. As a result, Wilson cannot demonstrate that the outcome of the trial would likely have been different if the jury had learned the specifics of Sierra's level of inebriation or the fact that he had cocaine in his system.

*h. Allowing the Prosecutor to speak with Wilson*

In his affidavit in response to Wilson's motion for postconviction relief, Haller averred that he was present when the prosecutor spoke directly to Wilson in his cell during plea negotiations. (A-73). The prosecutor offered Wilson a plea with a minimum of seventeen years imprisonment, and explained the evidence the State had against him. (A-73). Wilson, nonetheless, rejected the State's plea offer. (A-73). No breach of attorney-client privilege was even suggested by this claim. Accordingly, Wilson is not entitled to relief.

*i. "Propensity Evidence"*

At trial, Jason Crum testified in the State's case that Wilson had asked him for some marijuana, saying "I'm going to get me some pussy." (B-64-65). Crum, however,

denied that he told Moriarity that Wilson had asked him for some marijuana because he wanted to get Cornish high or get "some pussy from this black girl," testifying instead that he told Moriarity that "when we went to a place called the Dugout, Kevin was talking to this black girl, talking to her. I didn't say like – he's attracted to all kinds." (A-59-60). The State then called Moriarity as a witness, who testified that Crum had said Wilson "asked him for some marijuana because he wanted to get her (Cornish) high," and that the defendant "was attracted to black women and had not engaged in sexual intercourse with anyone for over a year." (A-61). This statement was admitted pursuant to 11 Del. C. §3507 through Detective Moriarity, who had interviewed Crum. (A-61).

In denying post-conviction relief, Superior Court found that these statements were admissions by Wilson under Delaware Rule of Evidence 801 and, therefore, not hearsay. *Wilson II*, 2006 WL 1064179 at *6. Furthermore, Superior Court ruled that the statements were relevant because they explained why Wilson might have been motivated to rape Cornish, who is black. *Id.* Wilson, in his motion for postconviction relief, claimed that this testimony amounted to little more than propensity evidence, inadmissible under Delaware Rule of Evidence 401 through 405. Contrary to petitioner's assertion, this was not propensity evidence, but rather highly probative evidence of the Wilson's initial state of mind, i.e., his intent in obtaining marijuana to "get some pussy," and his subsequent intent and motive in raping Cornish when it turned out that she did not smoke the marijuana or "get high." The testimony was relevant and admissible to show Wilson's motive in raping Cornish. Wilson has, therefore, failed to show that Haller was ineffective in failing to object to Wilson's statement that he was attracted to black women and had not had sex for over a year.

*j. Officer Kirby's Testimony*

Wilson has not established that he suffered any prejudice from Haller's failure to object when Officer Kirby continued to read from his report after the trial court had instructed him to stop. Because Kirby's testimony was consistent with the testimony of Naydean Cornish, Jorge Sierra, Gail Miller, and Officer Shawn Hatfield, there is no possibility that Haller's failure to object would have changed the outcome of the trial.

In sum, Wilson has failed to demonstrate that he suffered any prejudice from any of his counsel's alleged deficiencies. The Supreme Court affirmed the Superior Court's holding. The Delaware Superior Court, in its well-reasoned order, found that none of Wilson's ineffectiveness claims were meritorious. *See Wilson II*, 2006 WL 1360160. Against this backdrop, Wilson has not established that the state court's decision warrants relief under § 2254.

## Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Wilson's trial have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: January 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2008, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on January 31, 2008, I will mail, by United States Postal Service, the same documents to the following nonregistered participant:

Kevin W. Wilson, Jr.
SBI # 00263255
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: January 30, 2008